UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| V. | ) | No. 2:08-CR-16 |
| | ) | Jordan/Inman |
| MICHAEL MORRIS | ) | |

## REPORT AND RECOMMENDATION

This defendant is indicted for various offenses involving the trafficking of crack cocaine. He has filed a motion to suppress evidence (Doc. 52) of any verbal statement he gave to Agent Rob Watters of the Tennessee Bureau of Investigation and Detective Bill Bailey of the Hamilton County Sheriff's Department on the basis that (1) his statement was obtained under duress and he was given no prior *Miranda* warnings, (2) he did not authenticate the statement by signing it or initializing it in any way, and (3) it is merely the agent's recollection of the statement "after the fact."

Defendant also asks that any DVD recordings of any recorded surveillance be suppressed on the basis "that the cinematography is of such poor quality that it is impossible to describe, identify, or otherwise conclusively show with any certainly [the identity of the persons in that recording]."

This motion has been referred to the United States Magistrate Judge under the standing orders of this Court and pursuant to 28 U.S.C. § 636(b). An evidentiary hearing was held on July 10, 2008.

If a defendant made incriminating statements in response to questioning, *Miranda* warnings are required if the suspect was in custody, or the functional equivalent of custody, at the time of the questioning. *Miranda v. Arizona*, 530 U.S. 436 (1966). The test for determining whether an individual is in custody for *Miranda* purposes is whether, under the totality of the circumstances,

the "suspect's freedom of action is curtailed to a degree associated with formal arrest." *Berkemer v. McCarty*, 468 U.S. 420, 440 (1984). Some of those "circumstances" are: the purpose of the questioning; whether the immediate environment was hostile or coercive; whether the suspect had unrestrained freedom of movement; and whether the suspect initiated contact with the police, or voluntarily acquiesced to the questioning. *See, United States v. Salvo*, 133 F.3d 943, 950 (6th Cir. 1998). A person is not necessarily "in custody" merely because he has been told that he is a suspect in a crime and the questioning takes place at a police station. *Mason v. Mitchell*, 320 F.3d 604, 631-32 (6th Cir. 2003).

Three witnesses testified at the hearing: Detective Bailey of the Hamilton County Sheriff's Department, defendant, and defendant's wife. As an initial matter, it is noted that there are some factual disputes, and to the extent those factual disputes must be resolved, they are resolved in favor of the United States. In other words, Detective Bailey's version of the facts is accepted by this court.

In March 2008, the Tennessee Bureau of Investigation, the Hamilton County Sheriff's Department, and the Chattanooga Police Department, were engaged in a joint and on-going investigation of the drug trafficking activities, of various individuals. Defendant was already identified as a suspect in that investigation. Some time prior to March 7, 2008, Detective Bailey and TBI Agent Watters were discussing the investigation, and defendant's name was mentioned. Lieutenant McPherson overheard their conversation and defendant's name. McPherson told Bailey and Watters that he knew defendant; indeed, McPherson and defendant have known each other for their entire lives, and their daughters play together. Because of his familiarity with defendant,

2

McPherson offered to contact defendant and give him "the opportunity to help himself" by talking to Watters and Bailey regarding the investigation. McPherson made his contact with defendant, as a result of which defendant met with Bailey and Watters on March 7, 2008. There is no dispute that McPherson told defendant that he was a suspect. Neither is there any dispute that McPherson initially, nor Watters and Bailey thereafter, made any promises to defendant other than that his cooperation would be communicated to the appropriate prosecuting attorney. Defendant agreed to the meeting with Watters and Bailey and drove himself to the police station, arriving there even before Bailey and Watters. He was told that he was not under arrest, that he was under no obligation to meet with the officers, and that he was free to leave any time. It bears repeating that no promises were made to him other than his cooperation with law enforcement would be communicated to any prosecuting agency.

In *Mason, supra*, the defendant was the sole suspect in the investigation. He voluntarily came to the police station for questioning and was repeatedly advised that he was free to leave if he wished. Under those circumstances, the court held that he was not in custody for purposes of *Miranda*. 971 Fd.2d at 1201-02. This case presents essentially the same facts.

In conclusion with respect to this particular issue raised by defendant, he was not under any duress; he voluntarily appeared at the police department, knowing fully well that he would be questioned. He was not in custody, and he understood that he was free to leave at any time. Although the questioning occurred at the police station, under all the circumstances, the atmosphere was anything but coercive and hostile. He voluntarily answered the officers' questions, and he was told he could leave at any time. Although he testified that he would be arrested if he left, it became clear that he was told - and that he understood - that he *eventually* would be arrested simply because

of what the officers knew of his involvement in drug trafficking. He was never told that he would be arrested merely because he chose to answer no questions and leave, and defendant was under no misapprehension in that regard. He was not threatened, nor was he promised anything. Under the circumstances, *Miranda v. Arizona* was not implicated and there was no obligation by the officers to give *Miranda* warnings to defendant before questioning him.

There is no requirement that a suspect's incriminating statement be reduced to writing and that he thereafter authenticate that written version in some fashion. The agents or officers to whom defendant talked may testify as to their recollection of his statement, and they will be subject to cross examination. Also, if he so wishes, defendant himself may testify and deny that he made the statements as testified by the agents, and it will be for the jury to resolve that factual dispute. But, again, there is no requirement that his statement be reduced to writing and that he thereafter sign it or in some other way authenticate its accuracy.

Lastly, defendant asserts that any video recordings of surveillance must be suppressed because it is impossible to identify the individuals in that recording with any certainty. Defendant cites no authority for this proposition, and the court knows of none.

The court watched the relevant portions of this video tape. To be charitable, it is a terrible recording; the camera bounces and jerks about, and the subject of the recording floats in and out of the picture. It would be impossible for anyone who did not personally witness the transaction and the people in it to identify those people, or what was occurring, on the basis of the recording alone. To put it succinctly, standing alone the recording is virtually worthless. However, it will not stand alone. Purely by way of illustration, if a law enforcement agent personally observed the transaction that was being recorded and was able to identify the people at the time, that agent certainly could

testify to the identities of those people in the recording, and thereafter undergo cross examination. This brings to mind the friend who shows you photographs of his vacation to Rome, Italy. In one photograph, the friend points to a tiny speck in a far-away window and says, "That is the Pope." If the friend was there and recognized the Pope when the photograph was made, he certainly could appropriately identify the speck in the picture as the Pope, even under oath in a courtroom. In short, the quality of the video recording ultimately is an issue of weight, not admissibility.

For all the foregoing reasons, it is respectfully recommended that the defendant's motion to suppress (Doc. 52) be denied.[1]

Respectfully submitted,

s/ Dennis H. Inman<br>United States Magistrate Judge

---

[1] Any objections to this report and recommendation must be filed within ten (10) days of its service or further appeal will be waived. 28 U.S.C. § 636(b)(1)(B) and (C). *United States v. Walters*, 638 F.2d 947-950 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985).